UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARABIAN MOTORS GROUP W.L.L.,

     Plaintiff,

v.

FORD MOTOR COMPANY,

     Defendant.

_____/

Case No. 16-cv-13655
Hon. Matthew F. Leitman

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (ECF #21)

On October 17, 2016, Plaintiff Arabian Motors Group, W.L.L. ("Arabian Motors") filed a motion to preliminarily enjoin arbitration proceedings commenced by Defendant Ford Motor Company ("Ford") pursuant to an arbitration provision in the parties' automobile resale agreement (the "Resale Agreement"). (*See* the "Injunction Motion," ECF #5.)   In the Injunction Motion and related briefing, Arabian Motors argued that under the Motor Vehicle Franchise Contract Arbitration Fairness Act (the "Fairness Act" or the "Act"), 15 U.S.C. § 1226, (1) it could not be compelled to arbitrate its dispute with Ford and (2) the question of arbitrability had to be decided by the Court even though the Resale Agreement included a provision that delegated such questions to the arbitrator (the "Delegation Provision"). (*See id.*)

1

The Court disagreed with Arabian Motors and denied the Injunction Motion. (*See* Opinion and Order, ECF #18.)  The Court concluded that the Fairness Act does not apply to contracts – like the Resale Agreement – between manufacturers and *foreign* dealers; that the Act thus did not preclude enforcement of the Delegation Provision; and that the arbitrator, not the Court, should decide whether Arabian Motors could be compelled to arbitrate. (*See id.*)  On that basis, the Court declined to enjoin the arbitration.

Arabian Motors has now filed a Motion for Reconsideration. (*See* ECF #21.) Arabian Motors argues that the Court erred when it determined that the Fairness Act does not apply to contracts between manufacturers and foreign dealers.  The Court is not persuaded that it erred in that regard, much less that it committed the type of palpable and outcome-determinative error that would warrant reconsideration. Accordingly, the Motion for Reconsideration is **DENIED.**

**I**

To prevail on a motion for reconsideration, a movant must demonstrate that the Court was misled by a "palpable defect." E.D. Mich. L.R. 7.1(h)(3).  A "palpable defect" is a defect that is obvious, clear, unmistakable, manifest, or plain. *See Witzke v. Hiller*, 972 F.Supp. 426, 427 (E.D. Mich. 1997).  The movant must also show that the defect, if corrected, would result in a different disposition of the case. *See* E.D. Mich. L.R. 7.1(h)(3).

## II

In its Opinion and Order, the Court applied the analytical framework from *Small v. United States*, 544 U.S. 385 (2005), in order to determine whether the Fairness Act applies to contracts between manufacturers and foreign dealers. In *Small*, the Supreme Court held that a conviction in a foreign court could not serve as an underlying felony conviction in a statute that made it "unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. *Id.* at 387 (quoting 18 U.S.C. § 922(g)(1)). Arabian Motors argues that the Court misapplied *Small* in three respects. The Court addresses each contention below.

### A

Arabian Motors argues that under *Small*, when this Court analyzed whether the Fairness Act applied, it should have looked to the location of the "wrongful conduct giving rise to the dispute" rather than to Arabian Motors' status as a foreign dealer. (*See* Mot. for Reconsid. at 5-7, ECF #21 at Pg. ID 680-82.) Arabian Motors contends that the Fairness Act applies to this dispute because Ford's wrongful conduct "unquestionably" occurred "domestically" – in Dearborn, Michigan. (*See id.*) The Court disagrees for several reasons.

First, the Fairness Act is not concerned with the "wrongful conduct underlying the dispute." Instead, the Act focuses on whether, once a dispute has arisen, a

contractual provision requiring arbitration of that dispute may be enforced. Because the Act does not regulate or address the conduct "underlying the dispute," the location of that conduct does not play a central role in determining whether the Act applies.

Second, the Supreme Court's analysis in *Small* was not driven by the location of the "wrongful conduct underlying the dispute."[1] In fact, the Supreme Court's Opinion does not provide a single detail concerning Small's actual conduct and where he engaged in that conduct. Instead, the Supreme Court highlighted the "significant differences between foreign and domestic convictions" and concluded that those differences would have been relevant to Congress if it had expressly considered whether to include foreign convictions within the statute's reach. *Small*, 544 U.S. at 390. In light of those relevant differences, the Supreme Court deemed it appropriate to assume that Congress intended the statute to reach only domestic convictions. *See id.* at 390-91.

The Court applied that same multi-step analysis here. It identified the substantial differences between foreign and domestic dealers and concluded that those differences would have been relevant to Congress in any consideration of

---

[1] The Opinion of the Court in *Small* says only that Small "was convicted in a Japanese court of having tried to smuggle several pistols, a rifle, and ammunition into Japan." *Small*, 544 U.S. at 387. The only details concerning Small's actual conduct and the location of that conduct appear in Justice Thomas' dissenting Opinion. *See id.* at 394-95 (Thomas, J., dissenting).

4

whether to extend the Act to foreign dealers. (*See* Opinion and Order at 15-16, ECF #18 at Pg. ID 584-85.)   And given the relevant significant differences between foreign and domestic dealers, the Court deemed it appropriate to apply the assumption that Congress intended to reach only domestic subjects – in this case, only domestic dealers. (*See id.*)   The Court's analysis and conclusion are faithful to *Small*.

Finally (and in any event), Arabian Motors has failed to persuade the Court that the relevant wrongful conduct "unquestionably took place in the United States." (Mot. for Reconsid. at 7, ECF #21 at Pg. ID 682.)   Arabian Motors' Complaint in this action focuses extensively on (1) alleged misconduct by Ford's Dubai-based management team and (2) other alleged wrongful acts and omission by Ford in the Middle East. (*See*, *e.g.*, Compl. at ¶¶ 36-47, 53-71, 78-85, ECF #1 at Pg. ID 11-13, 15-22.)   Thus, even if the location of alleged misconduct underlying a dispute plays an important role in determining whether the Fairness Act applies (and it does not), the Court would reject Arabian Motors argument that the Fairness Act applies in this action because the purported misconduct occurred in this country.

## B

Arabian Motors next argues that the Court "fail[ed] to consider" two canons of statutory construction – the *in pari materia* canon and the "specific governs the general" canon – and that the Court thereby deviated from *Small's* command to

consider "the relevant statutory scheme." (Mot. for Reconsid. at 7-9, ECF #21 at Pg. ID 682-84.)  However, Arabian Motors did not cite or discuss either of these canons in any of its prior submissions or at the hearing on the Injunction Motion, and thus Arabian Motors is not entitled to reconsideration on the ground that the Court did not address those canons its decision. *See, e.g., Beverly v. Combs*, 2015 WL 753452, at *1 (E.D. Mich., Feb. 23, 2015) ("A motion for reconsideration is not a vehicle to . . . proffer new arguments . . . that the movant could have presented earlier"); *Dykes-Bey v. Winn*, 2014 WL 2894349, at *3 (E.D. Mich., June 26, 2014) (same); *Haas v. Peake*, 544 F.3d 1306, 1308 (Fed. Cir. 2008) (holding that party waived arguments based upon a canon of statutory construction that the party cited for first time in its motion for rehearing); *Cf. American Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984) (holding that party waived argument concerning severability of a statutory provision where party raised the argument "for the first time in their motion for reconsideration . . ..").

In any event, Arabian Motors has failed to demonstrate that applying of either of these canons here would require a different result here.  Arabian Motors merely identifies the canons, contends the Court did not consider them, and then asserts without substantial analysis that the Court's failure to apply the canons led "to an erroneous result." (Mot. for Reconsid. at 8-9, ECF #21 at Pg. ID 683-84.)  That is insufficient to warrant reconsideration.

Finally, Arabian Motors' reliance on the "specific controls over the general" canon is misplaced.  This canon operates "where there is an apparent conflict between statutes . . .." *Katkin v. C.I.R.*, 570 F.2d 139, 143 (6th Cir. 1978) (citing *Bulova Watch Co. v. United States*, 365 U.S. 753 (1961)).  That is not the case here. Arabian Motors identifies the Automobile Dealers Day in Court Act, 15 U.S.C. §§ 1221-1225 (the "ADDCA"), as the more "specific" statute, but that Act does not "conflict with" the Fairness Act.  The two statutes do not apply to the same matters. The Fairness Act relates exclusively to the enforcement of arbitration provisions; the ADDCA says nothing about the enforceability of such provisions.  The "specific controls over general" canon thus has no relevance here.

## C

Arabian Motors finally argues that the Court deviated from *Small* by failing to consider the Fairness Act's legislative history in the "proper light." (Mot. for Reconsid. at 9, ECF #21 at Pg. ID 684.)  According to Arabian Motors, Congress adopted the Fairness Act against the backdrop of a growing global economy, and Congress must have recognized that it would be "bad for the American [automotive] brand and its place in the global economy" if American manufacturers could compel foreign dealers to arbitrate disputes. (*Id.* at 10-11, ECF #21 at Pg. ID 685-86.)  That recognition by Congress, Arabian Motors contends, led Congress to include foreign dealers within the coverage of the Fairness Act. (*See id.*)

But Arabian Motors does not cite any portion of the Act's actual legislative history to support that contention. Likewise, Arabian Motors has failed to identify anything in the actual legislative history that contradicts this Court's reading of that history – as focused exclusively upon domestic dealers.[2]

Moreover, the Court rejects Arabian Motors' assertion that the Court could not properly understand the Act's legislative history without considering "the realities of the global economy as a whole." (Mot. for Reconsid. at 10, ECF # 21 at Pg. ID 685.) It is not as if the legislative history contained only vague references to "dealers" that could only be understood by considering broader economic matters. On the contrary, that history contained numerous clear references to *domestic* dealers and unambiguous statements that Congress intended to protect *those* dealers. (*See* Opinion and Order at 20-23, ECF #18 at Pg. ID 589-92.) Simply put, one need look no further than the plain language of the Act's legislative history in order to correctly understand that history – and to understand that that history does not rebut the Court's assumption under *Small* that Congress intended the Act to cover only domestic dealers.

---

[2] This Court analyzed the Fairness Act's legislative history for the limited purpose recognized in *Small* – namely, to determine whether any aspect of that history contradicted the assumption that Congress adopted the Act with only domestic concerns in mind. *See Small*, 544 U.S. at 393.

Finally, the Court does not find persuasive Arabian Motors' theory that Congress purposefully shielded foreign dealers from being forced to arbitrate with American automobile manufacturers in order to protect "the American brand and its place in the global economy." (Mot. for Reconsid. at 10, ECF #21 at Pg. ID 685.) That theory rests on the assumption that American manufacturers would compel foreign dealers to arbitrate *even if doing so would hurt their own sales and competitive position in the global economy.* But there is no reason to believe that American manufacturers would insist that foreign dealers arbitrate disputes if doing so had the effect of driving down the manufacturers' foreign sales. On the contrary, a fundamental assumption underlying our economic system is that rational actors (like American automobile manufacturers) will act in their own best interest. The Court cannot accept Arabian Motors' supposition that Congress included foreign dealers in the Fairness Act, in part, to protect American manufacturers from *themselves*, i.e., to prevent them from making the supposedly self-destructive business decision to compel foreign dealers to arbitrate.

## III

For all of the reasons stated above, Arabian Motors has not "demonstrate[d] a palpable defect" in the Court's prior order the correction of which "will result in a different disposition" of the motion for preliminary injunction. E.D. Mich. L.R.

7.1(h).    Accordingly, **IT IS HEREBY ORDERED** that the Motion for Reconsideration (ECF #21) is **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 21, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 21, 2017, by electronic means and/or ordinary mail.

s/Karri Sandusky (in the absence of Holly Monda)
Case Manager
(313) 234-5241
