UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------------------------------------

ARABIAN MOTORS GROUP, W.L.L.,

                       Plaintiff,

    -against-

FORD MOTOR COMPANY,

                   Defendant.

Civ. No. 2:16-cv-13655-MFL-EAS

Hon. Matthew F. Leitman

Mag. Judge Elizabeth A. Stafford

------------------------------------------------------------------------------------

**DEFENDANT'S CROSS-MOTION TO
CONFIRM ARBITRATION AWARD**

Defendant Ford Motor Company ("Ford"), in response to the motion (Doc.32) of plaintiff Arabian Motors Group, W.L.L. ("AMG") to vacate the Final Award dated December 4, 2017, issued by the International Centre for Dispute Resolution, International Arbitration Tribunal, in the arbitration entitled *Ford Motor Company v. Arabian Motors Group, W. L. L.*, Case No 01-16-0001-1181 (the "Award"), a copy of which is annexed as Exhibit 1 to AMG's motion (Doc. 32-2), hereby cross-moves, pursuant to 9 U.S.C. § 9 and 9 U.S.C. § 207, for entry of a judgment of this Court confirming the Award and granting Ford such other and further relief as the Court deems just and proper.  The grounds for this cross-motion are set forth more fully in the accompanying Brief, which is incorporated by reference herein.

Pursuant to E.D. Michigan LR 7.1(a)(2)(A), concurrence in the relief sought by this cross-motion was requested, but not received.

WHEREFORE, Ford respectfully requests that the Court grant this cross-motion and order appropriately.

Dated: April 6, 2018                          Respectfully submitted,

                                             HOGAN LOVELLS US LLP

                                             /s/ John J. Sullivan
                                             John J. Sullivan
                                             875 Third Avenue
                                             New York, NY 10022
                                             Tel: (212) 918-3000
                                             Fax: (212) 918-3100
                                             john.sullivan@hoganlovells.com

                                             Clay A. Guise (P59055)
                                             DYKEMA GOSSETT PLCC
                                             39577 Woodward Avenue, Suite 300
                                             Bloomfield Hills, MI 48304
                                             Tel: (248) 203-0797
                                             Fax: (248) 203-0763
                                             cguise@dykema.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------------------------------------------

ARABIAN MOTORS GROUP, W.L.L.,

                    Plaintiff,

    -against-

FORD MOTOR COMPANY,

                    Defendant.

---------------------------------------------------------------------------------------------

Civ. No. 2:16-cv-13655-MFL-EAS

Hon. Matthew F. Leitman

Mag. Judge Elizabeth A. Stafford

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION TO VACATE ARBITRATION AWARD
AND IN SUPPORT OF CROSS-MOTION TO CONFIRM**

HOGAN LOVELLS US LLP
John J. Sullivan
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
john.sullivan@hoganlovells.com

DYKEMA GOSSETT PLCC
Clay A. Guise (P59055)
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0797
Fax: (248) 203-0763
cguise@dykema.com

*Attorneys for Defendant*

## <u>ISSUES PRESENTED</u>

1.      Should the Arbitrator's Final Award be vacated on the ground that the Arbitrator "manifestly disregarded the law" when he concluded (as did this Court) that 15 U.S.C. § 1226 does not apply to the arbitration agreement between Plaintiff and Defendant?

2.      Should the Arbitrator's Final Award be confirmed on the ground that Plaintiff has not presented any meritorious ground for vacating or refusing to confirm the award?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1.    *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008)

2.    *Merrill Lynch, Pierce Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418 (6th Cir. 1995).

3.    *M & C Corp. v. Erwin Behr GmbH &Co., KG*, 87 F.3d 844, 851 (6th Cir. 1996)

# INTRODUCTION

Defendant Ford Motor Company ("Ford") respectfully submits this brief (1) in opposition to the motion (the "Motion") of plaintiff Arabian Motors Group, W.L.L. ("AMG") to vacate the Final Award issued in the arbitration between Ford and AMG, which is annexed as Exhibit 1 to AMG's Motion (the "Award"), and (2) in support of Ford's cross-motion to confirm the Award pursuant to 9 U.S.C. § 9 and 9 U.S.C. § 207.

AMG's Motion should be denied.  The sole ground for vacatur advanced by AMG is that the arbitrator acted in "manifest disregard of the law" when he ruled that he had jurisdiction and that 15 U.S.C. § 1226 does not apply to the arbitration agreement between AMG and Ford.  Even assuming (without agreeing) that "manifest disregard of the law" is an available ground for vacating the Award, that standard requires that the arbitrator's decision "fly in the face of clearly established legal precedent" and be one which "no judge or group of judges could conceivably come to."  AMG cannot meet this standard because there is no "clearly established legal precedent" on the § 1226 issue and because this Court came to the same conclusion as the arbitrator with respect to § 1226.

Ford's cross-motion to confirm should be granted. Under 9 U.S.C. § 9, a court "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [9 U.S.C.]."

1

Similarly, 9 U.S.C. § 207 directs the Court to confirm an arbitration award that falls (as does this one) under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention") "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." Because AMG has not presented any ground for vacating the Award under the Federal Arbitration Act, and cannot present any ground for refusing to confirm under the New York Convention, Ford's cross-motion should be granted.

## STATEMENT OF FACTS

Ford and AMG entered into a Global Importer Dealer Sales and Service Agreement dated May 2, 2005 (the "GIDSSA"), pursuant to which Ford appointed AMG as a distributor of Ford Products in Kuwait. Award, ¶¶ 1, 44. Paragraph 14 of the GIDSSA contains the following broad arbitration clause:

> The Company and the Dealer agree that the dispute resolution process outlined in this paragraph 14, which includes binding arbitration, shall be the exclusive mechanism for resolving any controversy or claim between them arising out of or relating in any way to this Agreement including all attachments hereto, its creation, interpretation, implementation, invalidity or termination.

Award, ¶ 8. Paragraph 14 requires the parties to submit any dispute relating to the GIDSSA to binding arbitration "in accordance with the United Nations Commission on Trade Law (hereinafter referred to as 'UNCITRAL') Arbitration

Rules in effect on the date of this Agreement," with the American Arbitration Association ("AAA") to serve as the "appointing authority." *Id.*

By letter dated March 14, 2016, Ford gave AMG 120 days' notice of termination of the GIDSSA (the "NOT"). Award, ¶ 1. The NOT was based on Ford's right under the GIDSSA to terminate "at will" on 120 days' notice, as well as certain "for cause" grounds, including (i) unauthorized changes in and/or misrepresentations regarding the ownership and management of AMG; (ii) the dispute between brothers Hamad and Adnan Al Wazzan, which "created chaos at the dealership, put Ford in the middle of the brothers' contradictory and threatening demands and caused harm to Ford, its customers and the Ford brand"; and (iii) AMG's unsatisfactory sales performance. Award, ¶¶ 55-56.

On April 1, 2016, Ford filed a demand for arbitration with AAA (the "Arbitration"). Award, ¶ 1. Ford requested (among other things) a declaration that it properly terminated the GIDSSA. *Id.* On April 30, 2016, AMG informed AAA that it objected to the Arbitration based on 15 U.S.C. § 1226. *Id.* ¶ 11.

On August 2, 2016, the AAA, through its international division, the International Centre for Dispute Resolution, appointed Lawrence S. Schaner to serve as the sole arbitrator (the "Arbitrator"). Award, ¶ 12. While AMG had objected to a previous arbitrator appointed by AAA, AMG did not object to Mr. Schaner. In Procedural Order No. 1, dated September 18, 2016, the Arbitrator

determined that AMG's objection to jurisdiction (the "Objection") would be treated as a preliminary question to be decided before consideration of the merits of Ford's claim. *Id.*, ¶ 13. On September 23, 2016, Ford timely submitted its opposition to AMG's Objection. *Id.*

After requesting and receiving several short extensions of time to file its reply brief, AMG instead filed this action on October 13, 2016, the day its reply brief was due. Award, ¶¶ 13-14. The Arbitrator subsequently gave AMG another opportunity to submit a reply brief, and AMG did so. *Id.*, ¶ 15.

In its Complaint in this action, AMG alleged that the dispute was not arbitrable and asked this Court to decide the merits. The Complaint asserted five claims for relief. The first claim asked the Court to enjoin the Arbitration, and the second asked for a declaratory judgment that the dispute was not arbitrable. In the other three causes of action, AMG sought damages from Ford for wrongful termination (the Third Cause of Action), "silent fraud" (the Fourth Cause of Action), and fraudulent misrepresentation (the Fifth Cause of Action). Doc. 1.

The Court denied AMG's motion to preliminarily enjoin the Arbitration, ruling that § 1226 did not apply to the GIDSSA and that the question of arbitrability was for the Arbitrator. Doc. 18. The Court subsequently denied AMG's motions for reargument and for certification of the § 1226 issue to the Court of Appeals. Docs. 24, 30.

Meanwhile, the Arbitrator issued an "Interim Award" dated December 22, 2016, ruling that the dispute was arbitrable.  Award, ¶ 16; Motion Ex. 2 (the "Interim Award").  In a reasoned decision making some of the same points made by this Court, the Arbitrator determined that § 1226 did not apply to the GIDSSA. *Compare* Interim Award, ¶¶ 24-26, 29-31 *with* Doc. 18 at 10-11, 16-23.

On January 12, 2017, the Arbitrator held a telephonic prehearing conference with both parties to discuss a prehearing and hearing schedule.  On January 19, 2017, the Arbitrator issued an order establishing a detailed pre-hearing schedule and set the evidentiary hearing for July 31-August 4 and August 7-11, 2017. Award, ¶ 17.

On February 6, 2017, AMG filed its answer and counterclaims in the Arbitration.  In its counterclaims, AMG asked the Arbitrator to award damages for the same substantive claims that AMG has pleaded in its Complaint in this action – i.e., wrongful termination, silent fraud, and fraudulent misrepresentation.  *See* Award, ¶ 19.

On June 19, 2017 – the date on which the parties' prehearing briefs were due – AMG announced that it would not file its prehearing brief but would instead seek a continuance of the briefing schedule and the evidentiary hearing.  Award, ¶ 23.  The Arbitrator denied AMG's subsequent motion for a 10-week continuance of all deadlines, finding (after a telephonic hearing) that AMG had failed to

demonstrate that the requested postponement was justified.  The Arbitrator set June 29 as a new date for submission of prehearing briefs.  *Id*., ¶ 24.

On June 29, Ford filed its prehearing brief, which contained all of the witness statements and exhibits on which Ford would rely for its case-in-chief. AMG, however, failed to file a prehearing brief.  *Id.,* ¶ 25.  AMG thereafter gave notice, on July 13, that it was withdrawing its counterclaims.  *Id.,* ¶ 27.

On July 24, 2017, AMG and Ford entered into a Joint Stipulation allowing Ford to file a motion for summary disposition and providing (among other things) that (1) the July 31 evidentiary hearing would be continued; (2) if the motion for summary disposition were denied, the final evidentiary hearing would be held on September 25; (3) AMG would have until September 5 to submit any documents on which it intended to rely at the continued final evidentiary hearing, if such hearing were to occur; and (4) if the motion for summary disposition were granted, AMG would not subsequently argue that the award was unenforceable on the grounds that summary disposition was procedurally improper or that AMG did not have the opportunity to cross-examine Ford's witnesses.  *Id.,* ¶¶ 29-30.  The Arbitrator accepted the parties' Joint Stipulation; granted AMG's motion to submit an amended statement of defense; and permitted the withdrawal of AMG's counterclaims.  *Id.*, ¶¶ 30-34.

On December 4, 2017, the Arbitrator issued the Award, which (1) incorporated by reference the Interim Award on arbitrability and (2) granted Ford's motion for summary disposition.  Award, ¶¶ 16, 56-108.  The Arbitrator granted a declaration that Ford had properly terminated the GIDSSA, both (a) without cause and (b) for cause as a consequence of unauthorized transfers of ownership, unauthorized changes in management, and the ongoing dispute between AMG owners Hamad Al Wazzan and Adnan al Wazzan.  *Id.*, ¶ 120(a)-(c).

The Arbitrator ordered AMG to comply with its post-termination obligations under paragraph 15 of the GIDSSA, such as discontinuing the use of Ford trademarks or otherwise holding itself out as an authorized Ford dealer.  *Id.,* ¶ 120(e).  The Arbitrator also ordered AMG to reimburse Ford for legal fees, certain expenses, and Ford's portion of the administrative fees and expenses of the arbitration tribunal and the compensation and expenses of the Arbitrator.  *Id.,* ¶¶ 120(f)-(h).  The total amount awarded to Ford by the Arbitrator was $1,351,763.94.  AMG has not yet paid Ford any part of the amount awarded.

**ARGUMENT**

## I.   THE MOTION TO VACATE SHOULD BE DENIED

AMG has moved to vacate the Award pursuant to Section 10 of the Federal Arbitration Act (the "FAA").  Motion at 7.  "Section 10 lists grounds for vacating an [arbitration] award, while § 11 names those for modifying or correcting one." *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).  In *Hall Street*, the Supreme Court stated:  "we now hold that §§ 10 and 11 respectively provide the FAA's *exclusive* grounds for expedited vacatur and modification [of arbitration awards]."  *Id*. at 584 (emphasis added).

Since AMG seeks vacatur, the "exclusive grounds" relevant to AMG's motion are those in § 10, which provides that the court may vacate an award:

(1)   Where the award was procured by corruption, fraud, or undue means;

(2)   Where there was evident partiality or corruption in the arbitrators, or either of them;

(3)   Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)   Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

8

9 U.S.C. § 10. Notably, AMG does not assert that any of these grounds apply to the Award. Instead, AMG invokes the judicially-created doctrine of "manifest disregard of the law." Motion at 8.

Even assuming (without agreeing) that the "manifest disregard" doctrine survived the Supreme Court's decision in *Hall Street*,[1] AMG has not satisfied and cannot satisfy the "manifest disregard" standard. As AMG acknowledges, the Sixth Circuit has defined that standard as follows: an arbitrator acts with manifest disregard if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator refused to heed that legal principle." *Merrill Lynch, Pierce Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995). In *Jaros*, the Sixth Circuit went on to say that the arbitrator's decision

---

[1] The Sixth Circuit has not issued any binding precedent on the question whether *Hall Street* abrogates the "manifest disregard" theory. In an unpublished decision cited by AMG, the Court ruled that the theory does survive *Hall Street*. *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 418 (6th Cir. 2008). However, in a published decision pre-dating *Coffee Beanery*, and an unpublished decision post-dating it, the Sixth Circuit acknowledged that *Hall Street* "casts some doubt on the continuing vitality of [the manifest disregard] theory." *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 380 (6th Cir. 2008); *accord*, *Ozormoor v. T-Mobile USA, Inc.*, 459 F. App'x 502, 505 (6th Cir. Jan. 25, 2012). *See also Stonebridge Equity v. China Auto. Sys., Inc*., 520 F. App'x 331, 335 (6th Cir. 2013) (not citing *Coffee Beanery* and declining to reach the question of the doctrine's continued vitality where there was no manifest disregard of the law by the arbitrator); *Marshall v. SSC Nashville Operating Co., LLC*, 686 F. App'x 348, 353 (6th Cir. 2017) (following *Coffee Beanery* but holding that the manifest disregard standard was not met). Because AMG cannot satisfy the manifest disregard standard, there is no need for this Court to reach the issue of the doctrine's continued vitality.

"must fly in the face of clearly established legal precedent" and that "[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed.  Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside."  *Id.* at 421.  In addition:

> In order to constitute a "manifest disregard of the law," . . . the error under review must be "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it."

*M & C Corp. v. Erwin Behr GmbH &Co., KG*, 87 F.3d 844, 851 (6th Cir. 1996), quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986).

AMG has not satisfied and cannot satisfy the manifest disregard standard. First, there is no "clearly established legal precedent" on the § 1226 issue.  Indeed, AMG itself previously argued to this Court that the § 1226 issue should be certified for appeal because it presents "an issue of first impression in the Sixth Circuit, as well as in federal circuit courts of appeals nationally." (Doc. 26 at Pg 9 of 24, Pg ID 728; *see id*. at Pg ID 738-39.)  Second, this Court came to the same conclusion as the Arbitrator with respect to the applicability of § 1226.  Thus, it cannot be said that the Arbitrator's decision is not "legally plausible" or that "no

10

judge or group of judges could conceivably come to the same determination."  For the same reason, AMG cannot plausibly accuse the Arbitrator of "a conscious decision to ignore the relevant law." *M & C Corp.*, 808 F.2d at 851 n.3.

While AMG pays lip service to the "manifest disregard" standard, its arguments in support of vacatur disregard that very standard.  AMG repeats arguments that have previously been rejected by both the Arbitrator and this Court and which are obviously not "applicable legal principle[s that are] clearly defined and not subject to reasonable debate." *Jaros*, 70 F.3d at 421.

For example, AMG repeats its argument that the statutory term "any other person" must be construed to include persons outside the United States and must be held to rebut the presumption against extraterritorial application.  Motion at 10.  As both this Court and the Arbitrator have previously pointed out, however, the Supreme Court has held that such statutory language is not presumed to include persons outside of the United States.  Doc. 18 at 10-11; Interim Award, ¶ 25.

AMG also reprises its *expressio unius est exclusion alterius* and *in pari materia* arguments based on the differing language in §§ 1221 and 1226 of 15 U.S.C.  Motion at 10, 14.  But as this Court has pointed out, these canons of statutory construction have little force here because §§ 1221 and 1226 are not even part of the same statute and were enacted almost 50 years apart.  Doc. 18 at 18-19 & n. 5.  Moreover, it is a *non sequitur* to say, simply because the two statutes have

11

differing language, that § 1226 must have been intended to have extraterritorial application.  *Id*. at 19-20; Interim Award, ¶ 26.  Finally, arguments based on canons of statutory construction – which are merely non-binding aids to interpretation – are hardly the type of "established legal precedent" sufficient to satisfy the "manifest disregard" standard.

AMG also complains that the Arbitrator concluded that the "focus" of § 1226 was "on the protection of domestic U.S. automobile dealers to enable them to make use of State dispute resolution mechanisms," while AMG contends that the actual focus was "wrongful conduct" committed in the United States.  Motion at 11.  Section 1226, however, does not purport to regulate any conduct; instead, it "sets a pre-condition for the enforcement of certain contractual arbitration provisions."  Doc. 18 at 12.  Moreover, AMG's assertions that the alleged "wrongful conduct" took place in Michigan are inconsistent with the Complaint's own allegations, which attribute almost all of the alleged "wrongful conduct" to non-U.S. Ford representatives acting overseas.  Complaint (Doc. 1), ¶¶ 36, 53-73, 78, 80-82, 84, 88.

AMG also argues that the Arbitrator failed to examine the relevant "statutory language, context, history, [and] purpose."  Motion at 13, quoting *Small v. United States*, 544 U.S. 385, 387 (2005).  The text of the Arbitrator's Interim Award flatly refutes this contention.  For example, the Arbitrator relied on, and cited to, specific

12

statements in the legislative history of § 1226 to support his conclusion that the statute's focus was the protection of the rights of U.S. dealers to use state dispute resolution mechanisms.  Interim Award, ¶¶ 29-30.  In contrast, AMG fails to cite anything in the legislative history supporting its contention that in 2002 Congress was concerned with protecting automobile dealers in foreign countries because of the development of a "global economy."  *See* Motion at 15-16.

In short, the Arbitrator did not act in manifest disregard of the law in ruling that § 1226 was inapplicable.  The motion to vacate should be denied.

## II.   FORD'S MOTION TO CONFIRM SHOULD BE GRANTED

Ford is entitled to confirmation of the Award under both § 9 of Chapter 1, and § 207 of Chapter 2, of the FAA.

Paragraph 14 of the GIDSSA provides that it "is subject to Federal Arbitration Act, 9 U.S.C.A. (United States Code Annotated) § 1 et seq. and judgment upon the award rendered by the Arbitrator, if any, shall be final and binding upon the parties."  Award, ¶ 8 (quoting subdivision (b)(7) of Paragraph 14 of the GIDSSA).  As AMG implicitly acknowledges by moving to vacate the award pursuant to § 10 of Chapter 1 of the FAA, Paragraph 14 of the GIDSSA is an arbitration agreement within the meaning of 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . .

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.")

Paragraph 14 of the GIDSSA is also an agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), and thus is also enforceable under Chapter 2 of the FAA.  All arbitration agreements that come within the definition in 9 U.S.C. § 2 also fall under the New York Convention, unless they are "entirely between citizens of the United States."  9 U.S.C. § 202.  Because AMG is not a citizen of the United States, the GIDSSA falls under the New York Convention and is enforceable under Chapter 2 of the FAA.  *See Jacada (Europe) Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 708-09 (6th Cir. 2005) *abrogated on other grounds by Hall Street*, 552 U.S. 576 (2008).

> Section 9 of Chapter 1 of the FAA provides in pertinent part:
>
> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.  While Paragraph 14 of the GIDSSA does not specify a court for confirmation of the award, it does provide that "[b]inding arbitration shall take

14

place in the State of Michigan unless otherwise agreed by the parties in writing." Award, ¶ 8 (quoting subdivision (b)(7) of Paragraph 14 of the GIDSSA). The parties stipulated in the Arbitration that the proceedings "would be deemed to have occurred for all purposes in Michigan," and that "any motion to vacate the final award must be brought" in this Court. Award, ¶ 26.

Moreover, this Court is also a proper venue for confirmation pursuant to Chapter 2 of the FAA. *See* 9 U.S.C. § 203 (the district courts of the United States have original jurisdiction over any action or proceeding falling under the New York Convention); 9 U.S.C. § 204 (an action over which the district courts have jurisdiction pursuant to section 203 "may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States"); and 9 U.S.C. § 207 ("any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration").

Since AMG has not presented any grounds for the award to be vacated, modified, or corrected as prescribed in §§ 10 and 11 of the FAA, an order confirming the award should be granted pursuant to § 9.

Similarly, Ford is entitled to confirmation under § 207, which provides that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. The Convention's grounds for non-enforcement are even narrower than those in Chapter 1 of the FAA and, most notably, do not include "manifest disregard of the law." *See M & C Corp.,* 87 F.3d at 848-49, 851 (listing grounds for refusal to enforce and holding that "manifest disregard for the law" is not an available ground to deny confirmation under § 207).

Accordingly, Ford is entitled to confirmation of the Award under both § 9 and § 207 of the FAA. Such judgment should include (i) the declaratory relief granted to Ford in ¶ 120(a) through (d) of the Award; (ii) the injunctive relief granted to Ford in ¶ 120(e); and (iii) a money judgment in the amount of $1,351,763.94, the aggregate amount granted in ¶ 120(f) through (h).[2]

---

[2]     Under § 13 of the FAA, Ford is required to file certain papers with the Clerk of Court "at the time" an order confirming the arbitration award is filed with the Clerk, including "the agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award"; "the award"; and "each notice, affidavit or other paper used upon an application to confirm" and "a copy of each order of the court upon such an application." Ford will file the required documents with the Clerk as and when provided by the statute (or earlier if the Court so directs).

## <u>CONCLUSION</u>

For the foregoing reasons, AMG's motion to vacate should be denied, and Ford's cross-motion to confirm should be granted.

Dated: April 6, 2018

Respectfully submitted,

HOGAN LOVELLS US LLP

/s/ John J. Sullivan
John J. Sullivan
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100
john.sullivan@hoganlovells.com

Clay A. Guise (P59055)
DYKEMA GOSSETT PLCC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0797
Fax: (248) 203-0763
cguise@dykema.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 6, 2018, I filed the foregoing with the court's

ECF system, which will send notification of such filing to all counsel of record.


/s/ John J. Sullivan_____
John J. Sullivan


Dated: April 6, 2018