UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARABIAN MOTORS GROUP W.L.L.,

       Plaintiff,                            Case No. 16-cv-13655
                                                Hon. Matthew F. Leitman

v.

FORD MOTOR COMPANY,

       Defendant.

_____/

## OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS (ECF No. 55), (2) DISMISSING PLAINTIFF'S CLAIMS IN PART BASED ON MOOTNESS, AND (3) DISMISSING PLAINTIFF'S REMAINING, NON-MOOT CLAIMS WITHOUT PREJUDICE

In this action, Plaintiff Arabian Motors Group W.L.L. asserts fraud and breach of contract claims against Defendant Ford Motor Company. (*See* Compl., ECF No. 1.)  Ford insists that these claims are subject to mandatory arbitration under a provision of the parties' contract, and it has moved to stay these proceedings so that Arabian Motors' claims may be adjudicated by an arbitrator. (*See* Mot. to Stay, ECF No. 55.)  The Court agrees with Ford that Arabian Motors must present its claims to an arbitrator.  But the Court believes that dismissal, rather than a stay, is the best course of action.

Ford counters that under Section 3 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3, this Court lacks the discretion to dismiss.  Section 3 provides that "on

application of one of the parties," a district court "shall stay the trial of the action" if the action involves "any issue" that is "referable to arbitration."  Ford says that since Arabian Motors' claims are subject to arbitration and since it (Ford) has applied for a stay, Section 3 compels the Court to stay, rather than dismiss, this action.

The stay versus dismissal issue presented here has sharply divided the federal courts. Several circuits have concluded that a district court does have discretion to dismiss an action after concluding that all claims are subject to arbitration.  Several others have adopted Ford's position that Section 3 of the FAA compels a district court, upon application of a party, to stay, rather than dismiss, an action even if all of the claims are subject to arbitration.

The Sixth Circuit has not yet definitively resolved the stay versus dismissal issue in a published decision.  But it has strongly suggested in published decisions, and has squarely held in several unpublished decisions, that a district court *may* dismiss an action if it concludes that all claims are subject to arbitration.  The Sixth Circuit has also opined (in addressing a related issue) that allowing district courts to dismiss actions in which all claims are subject to arbitration does not undermine the pro-arbitration policies of the FAA.  The clear majority of district courts in this Circuit have likewise concluded that a district court may dismiss an action in which all of the claims are subject to arbitration.  Several of those courts have rejected Ford's argument that Section 3 of the FAA requires a stay (if applied for) where all

claims are subject to arbitration. And with good reason. A careful reading of Section 3 reveals that it does not apply to cases in which all claims are subject to arbitration.

For the reasons explained in detail below, this Court concludes that it may dismiss, rather than stay, an action in which all claims must be presented to an arbitrator. And the Court further concludes that dismissal, rather than a stay, makes the most sense here where all of Arabian Motors' remaining, non-moot claims are subject to mandatory arbitration. The Court therefore exercises its discretion to **DENY** Ford's motion to stay (ECF No. 55) and to *sua sponte* **DISMISS** Arabian Motors' remaining, non-moot claims without prejudice.

## I

## A

Arabian Motors is a corporation organized under the laws of Kuwait. (*See* ECF No. 5-1, PageID.225.) Ford is an automobile manufacturer headquartered in Dearborn, Michigan. (*See id.*) On May 2, 2005, Arabian Motors and Ford entered into an agreement under which Ford sold vehicles to Arabian Motors for resale to customers in the Middle East (the "Resale Agreement"). (*See id.*)

In the Resale Agreement, Arabian Motors and Ford agreed to arbitrate any "dispute, claim or controversy … in connection with the breach, implementation, invalidity, or termination" of the Resale Agreement that the parties could not resolve through informal negotiations. (Resale Agmt. at ¶14, ECF No. 5-1, PageID.245-

246.)  Specifically, the parties agreed that any unresolved disputes would be subject to "binding arbitration in accordance with the United Nations Commission on Trade Law ["UNCITRAL"] Arbitration Rules in effect on the date" the Resale Agreement was executed. (*Id.* at ¶14(b), PageID.245.)  Those rules provided, among other things, that "the arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objection with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement." 1976 UNCITRAL Arbitration Rules, Rule 21.

**B**

The relationship between Arabian Motors and Ford apparently began to deteriorate in 2014.  Two years later, on March 14, 2016, Ford sent written notice to Arabian Motors terminating the Resale Agreement effective July 27, 2016 (the "Notice of Termination"). (*See* Notice of Termination, ECF No. 5-2, PageID.295-297.)

On March 31, 2016, Ford submitted a Notice of Arbitration and Statement of Claim (the "Arbitration Demand") to the American Arbitration Association (the "AAA"). (*See* Arbitration Demand, ECF No. 5-2, PageID.253-267.)  The Arbitration Demand sought a "declaratory judgment that Ford properly terminated the [Resale Agreement] for any and/or all reasons stated in the [Notice of Termination] and is not liable to [Arabian Motors] for terminating the [Resale Agreement] or relating to

4

the course of dealings between Ford and [Arabian Motors]." (*Id.*, PageID.266.) The AAA assigned the matter to arbitrator Lawrence S. Schaner (the "Arbitrator").

In email messages sent to the AAA on April 30, 2016, May 24, 2016, and September 6, 2016, Arabian Motors objected to the arbitration on the grounds that (1) the dispute was not arbitrable and (2) the AAA lacked jurisdiction to decide whether Arabian Motors could be compelled to arbitrate. (*See* emails, ECF No. 13-4, PageID.494; ECF No. 5-3, PageID.299; ECF No. 13-6, PageID.503-504.)

## C

On October 13, 2016, Arabian Motors filed a five-count Complaint in this Court against Ford. (*See* Compl., ECF No. 1.) In the Complaint, Arabian Motors brings the following claims:

- In Count I of the Complaint, Arabian Motors seeks "an order enjoining the arbitration filed by Ford."[1] (*Id.* at ¶110, PageID.28.)

- In Count II of the Complaint, Arabian Motors seeks a "declaratory judgment pursuant to 28 U.S.C. § 2201[] that it has no obligation to

---

[1] As described in further detail above, the arbitration filed by Ford is complete, the Arbitrator entered a Final Award in favor of Ford, and both this Court and the Sixth Circuit have confirmed that award. Thus, the Court **DISMISSES** this claim as moot.

arbitrate [Ford's claims] or the claims [Arabian Motors] makes in [its] Complaint."[2] (*Id.* at ¶113, PageID.28.)

- In Count III of the Complaint, Arabian Motors seeks damages for Ford's alleged breach of contract. (*See id.* at ¶¶ 114-148, PageID.28-37.)

- In Count IV of the Complaint, Arabian Motors seeks damages for Ford's alleged silent fraud. (*See id.* at ¶¶ 149-162, PageID.37-41);

- In Count V of the Complaint, Arabian Motors seeks damages for Ford's alleged fraudulent misrepresentations. (*See id.* at ¶¶ 163-175, PageID.41-43.)

On October 17, 2016, Arabian Motors filed a motion for preliminary injunction to stay the arbitration proceedings that Ford had commenced. (*See* Mot. for Prelim. Inj., ECF No. 5.)  Notably, Arabian Motors did not contend that the claims Ford asserted in the arbitration fell outside of the mandatory arbitration provision in the Resale Agreement.  Instead, Arabian Motors argued that a federal statute, the Motor Vehicle Franchise Contract Arbitration Fairness Act (the "Fairness Act" or the "Act"), 15 U.S.C. § 1226, prohibited enforcement of the

---

[2] As explained in text above, and in footnote one above, the arbitration filed by Ford is complete and both this Court and the Sixth Circuit have confirmed the Arbitrator's Final Award in favor of Ford on Ford's claims.  Therefore, the Court **DISMISSES** this claim as moot to the extent that it seeks a declaration that Arabian Motors should not be compelled to arbitrate Ford's claims.

arbitration provision.  The Fairness Act provides that "whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if *after* such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy." 15 U.S.C § 1226(a)(2) (emphasis added).  Arabian Motors contended that the Act precluded enforcement of the arbitration provision because (1) the Act requires the post-dispute consent of all parties to submit any issue (including arbitrability) to an arbitrator but (2) the arbitration provision in the Resale Agreement purports to assign the issue of arbitrability to the Arbitrator even though Arabian Motors had not given its post-dispute consent to such an assignment. (*See* Mot. for Prelim. Inj., ECF No. 5, PageID.209-220.)  In response, Ford argued that the Fairness Act applies only to domestic automobile dealers and does not apply to foreign dealers like Arabian Motors. (*See* Ford Resp. to Mot. for Prelim. Inj., ECF No. 13.)

The Court agreed with Ford and declined to grant Arabian Motors a preliminary injunction.  The Court ruled that the Fairness Act does not apply to the Resale Agreement and that the Act therefore did not preclude enforcement of the agreement's mandatory arbitration provision. (*See* Op. and Order, ECF No. 18.) And because that provision was enforceable, the Court held that Arabian Motors needed to present its objections to arbitration to the Arbitrator. (*See id.*)

**D**

Arabian Motors then raised its objections to arbitration with the Arbitrator. It argued to the Arbitrator that under the Fairness Act, it could not be compelled to arbitrate the claims asserted by Ford because it had not given advance written consent. But Arabian Motors still did not argue that Ford's claims fell outside the scope of the mandatory arbitration provision in the Resale Agreement. (*See* Arbitrator's Interim Award, ECF No. 28-5, PageID.898.) Ford again argued that the Fairness Act did not apply to the Resale Agreement because Arabian Motors is a foreign automobile dealer.

The Arbitrator agreed with Ford. (*See id*.) He ruled that the Fairness Act applies only to domestic automobile dealers and that, accordingly, it posed no obstacle to the arbitration proceedings commenced by Ford. (*See id*.) He then proceeded to determine whether Ford's claims fell within the scope of the arbitration provision of the Resale Agreement. He easily concluded that they did – a conclusion that Arabian Motors did not resist. (*See id.*)

Following the Arbitrator's interim ruling, Arabian Motors filed an Answer and a four-count Counterclaim in the arbitration. (*See* Arbitrator's Final Award, ECF No. 32-2, PageID.976-977, describing the procedural history of the arbitration.) In its Counterclaim, Arabian Motors sought, among other things, damages for alleged fraud and wrongful termination of the Resale Agreement. (*See id*.) Arabian Motors

later withdrew its Counterclaim from the arbitration proceedings. (*See id.*, PageID.978.)

The Arbitrator thereafter resolved the arbitration by granting a motion for summary disposition filed by Ford. (*See id.*, PageID.983-1001.)  He memorialized his decision in a Final Award in which he ruled that: (1) the Resale Agreement was terminable at will, and Ford properly exercised its right to terminate at will; (2) Ford properly terminated the Resale Agreement for cause under Paragraph 13(b)(1); and (3) Ford properly terminated the Resale Agreement for cause under Paragraph 13(b)(4). (*See id.*, PageID.984-997.)  The Arbitrator also ordered Arabian Motors to pay Ford more than $1.25 million in legal fees and other costs. (*See id.*, PageID.1000.)

## E

After the Arbitrator issued the Final Award, Arabian Motors returned to this Court and filed a motion to vacate the award. (*See* Mot. to Vacate, ECF No. 32.) Arabian Motors renewed its argument that under the Fairness Act, it should not have been compelled to arbitrate because it had not given advance written consent. (*See id.*)  (But Arabian Motors again did not argue that Ford's claims fell outside of the Resale Agreement's arbitration provision.)  Ford filed a combined response in opposition to Arabian Motors' motion and cross-motion to confirm the Final Award. (*See* Ford Resp. to Mot. to Vacate, ECF No. 35.)  Ford argued that the Arbitrator (1)

properly concluded that the Fairness Act did not apply to the Resale Agreement and (2) did not make any error that would warrant vacating the Final Award. (*See id.*)

The Court entered an order denying Arabian Motors' motion and granting Ford's motion. (*See* Order, ECF No. 37.)  In that order, the Court instructed the parties to confer and attempt to agree upon the form of a judgment confirming the Final Award. (*See id.*)  They did so and reached an agreement.  On June 6, 2018, the Court entered the judgment confirming the Final Award. (*See* Judgment, ECF No. 39.)  That judgment did not specifically refer to Arabian Motors' claims against Ford that it had raised in this action, and the Court had not directly ruled upon the viability of those claims at the time it entered the judgment.

## F

Arabian Motors thereafter filed an appeal from the judgment in the United States Court of Appeals for the Sixth Circuit. (*See* Notice of Appeal, ECF No. 40.) Heading into that appeal, Arabian Motors believed that this Court's rulings, taken together, effectively prevented Arabian Motors from pursuing its claims in this forum.  More specifically, Arabian Motors believed that order denying its motion for preliminary injunction – in which the Court held that the Fairness Act did not bar enforcement of the arbitration provision in the Resale Agreement – had been "incorporated" into the Court's judgment. (Arabian Motors Reply Br., *Arabian Motors Group W.L.L. v. Ford Motor Company*, Sixth Circuit Case No. 18-1748, Dkt.

28, Pages 12-13.)  And based upon that belief, Arabian Motors concluded that the judgment compelled to it arbitrate its claims against Ford. (*See id.*)  In an attempt to revive its ability to assert those claims in this forum, Arabian Motors argued to the Sixth Circuit that this Court had misconstrued and misapplied the Fairness Act. (*See* Arabian Motors Appellant Br., *Arabian Motors Group W.L.L. v. Ford Motor Company*, Sixth Circuit Case No. 18-1748, Dkt. 20, Pages 28-45.)  In addition, Arabian Motors attacked this Court decision confirming the arbitrator's Final Award. (*See id.*, Pages 46-59.)

The Sixth Circuit first held that it lacked jurisdiction over Arabian Motors' challenge to this Court's ruling that the Fairness Act did not bar enforcement of the arbitration provision in the Resale Agreement.  As described above, this Court reached that conclusion in its order denying Arabian Motors' motion for preliminary injunction. (*See* Op. and Order, ECF No. 18.)  And the Sixth Circuit concluded that that order was not subject to appeal because it was an interlocutory order. *See Arabian Motors Group W.L.L. v. Ford Motor Company*, 775 F. App'x 216, 217 n.1 (6th Cir. 2019).

The Sixth Circuit then turned to the portion of Arabian Motors' appeal challenging this Court's decision to confirm the Final Award.  The court affirmed that decision.  It rejected Arabian Motors' argument that the Arbitrator had shown a

11

manifest disregard for the law when he concluded that the Fairness Act did not apply to the Resale Agreement. *See id.* at 219-20.

## G

Following the Sixth Circuit's ruling, the case returned to this Court for further proceedings. The Court then convened a status conference on October 16, 2019, to discuss next steps. During that conference, counsel for Arabian Motors reiterated his belief that the Court's prior ruling concerning the Fairness Act effectively barred Arabian Motors from pursuing its claims in this forum. And he told the Court that Arabian Motors wished to appeal that ruling. He indicated that Arabian Motors wanted the Court to enter a final judgment memorializing the Court's ruling so that Arabian Motors could challenge the ruling in the Sixth Circuit and, if successful, litigate its claims here. Counsel for Ford responded that it was not clear whether Arabian Motors wished to have the Court dismiss its (Arabian Motors') claims with or without prejudice, and Ford's counsel suggested that, upon a clarification from Arabian Motors, Ford may not object to dismissal. After some additional discussion with counsel, the Court instructed the parties to attempt to work together to see if they could agree upon a path forward for wrapping up the proceedings.

The parties were not able to agree upon a plan for completing the litigation. So Arabian Motors filed a motion for entry of a final judgment and submitted a proposed judgment dismissing its claims. (*See* Mot. for Entry of Judgment, ECF No.

46; Arabian Motors Proposed Judgment, ECF No. 50.)  Arabian Motors explained that it sought entry of judgment dismissing its own claims based on its belief that this Court had already concluded (in the Court's opinion and order denying Arabian Motors' motion for a preliminary injunction) that Arabian Motors could not pursue its claims in this forum. (*See* Mot. For Entry of Judgment, ECF No. 46, PageID.1155-1157.)  Arabian Motors further said that it sought dismissal to secure a ruling from the Sixth Circuit that would allow it to assert its claims against Ford in this Court. (*See id*.)  Ford objected to the judgment proposed by Arabian Motors and proposed its own judgment. (*See* Ford Resp. to Mot. for Entry of Judgment, ECF No. 47; Ford Proposed Judgment, ECF No. 51.)  The Court declined to enter either proposed judgment.  It decided that the best course of action was to put the "ball" in Ford's "court."  (*See* 4/20/2020 Hr'g Tr., ECF No. 54, *see also infra* at n. 3.)  The Court told Ford that because Arabian Motors' claims were still pending in this action, Ford had two options: it could file a motion raising its contention that Arabian Motors' claims are subject to mandatory arbitration (or attacking the claims on some other legal basis) or it could file an Answer and litigate the claims in this Court.[3] (*See* 4/20/2020 Hr'g Tr., ECF No. 54.)

---

[3] The Court believed that putting the onus on Ford to (1) assert that Arabian Motors' claims were subject to mandatory arbitration and/or (2) litigate the claims in this Court, best reflected the true positions of the parties.  It has always been Ford's position that all of Arabian Motors' claims are subject to arbitration, and it has always been Arabian Motors' position that under the Fairness Act, it cannot be

In response, Ford filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Stay Action Pursuant to 9 U.S.C. § 3. (*See* Mot. to Dismiss, ECF No. 55.)  Ford first argued that this action was moot because it was "clear from the record in this case" that Arabian Motors did "not intend to pursue" its remaining claims to judgment. (*Id.*, PageID.1212.)  The "record" to which Ford referred included Arabian Motors' motion for entry of judgment (*see* Mot. for Entry of Judgment, ECF No. 46).  Second, Ford contended that if the Court did not dismiss for lack of subject matter jurisdiction, it was required to stay the action under Section 3 of the FAA because all of the claims were subject to arbitration and because it (Ford) had applied for a stay. (*See* Mot. to Dismiss, ECF No. 55, PageID.1214.)

---

compelled to arbitrate any of its claims.  Given these respective positions, it made the most sense to have Ford seek dismissal on the basis of the mandatory arbitration provision because it was Ford, not Arabian Motors, that actually believed that that provision was enforceable against Arabian Motors.  Any motion by Arabian Motors for entry of judgment dismissing its own claims would only have been to secure appellate review of this Court's earlier ruling on the applicability of the Fairness Act and would not have been based upon a belief by Arabian Motors that Ford was actually entitled to judgment.  To best align the procedural posture of the case with the actual positions of the parties, the Court directed that if any step toward dismissal and/or entry of final judgment against Arabian Motors was to be made, it would have to come from Ford. (*See* 4/20/2020 Hr'g Tr., ECF No. 54, PageID.1189-1193, 1196-1200.)  Ford has suggested that the Court violated the principle of "party presentation" by directing that the proceedings move forward in this manner. (*See* Ford Supp. Br., ECF No. 62.)  For the reasons explained in this footnote and on the record (*see* 8/18/20 Status Conf. Tr., ECF No. 61, PageID.1350-1352), the Court respectfully disagrees.

Arabian Motors opposed Ford's motion. (*See* Arabian Motors Resp., ECF No. 57.) Arabian Motors rejected Ford's contention that it had no intention of litigating its remaining claims:

> Despite Ford's contorted self-impressions of AMG's intentions, it has always been and continues to be AMG's goal to fully litigate the substantive claims of its Complaint (Claims III- V) before this Court. For Ford to suggest otherwise makes no sense at any level. Is Ford suggesting that AMG initiated its action merely to explore the exercise of pursuing the injunctive and declaratory relief sought in Counts I and II of its Complaint out of academic curiosity? Contrary to Ford's argument, AMG's motion practice relating to the entry of a final Judgment is intended to clarify this Court's prior Judgment and closure of this case, so it may proceed. AMG fully intends to try its claims before this Court, and has fought for 3 ½ years to achieve its goal.

(*Id.*, PageID.1309-1310.)  Arabian Motors also argued that the Court should not stay the action. (*Id.*, PageID.1310-1311.)

On August 18, 2020, the Court held a status conference to discuss Ford's pending motion to dismiss.  During that conference, the Court orally denied Ford's motion to the extent that it sought dismissal based upon the asserted mootness of this action. (*See* 8/18/20 Status Conf. Tr., ECF No. 61, PageID.1350-1351.[4])  The Court was satisfied that a full and fair review of the record made clear that Arabian Motors continued to pursue its claims. (*See id.*)  The Court then asked the parties to submit

---

[4] The Court subsequently entered a written order memorializing this ruling. (*See* Order, ECF No. 60.)

supplemental briefs on the issues of whether (1) this Court had the authority to dismiss, rather than stay, this action and (2) if this Court decided to dismiss the action, should the dismissal be with or without prejudice. (*See id.*, PageID.1363.)

In Ford's supplemental brief, it argued that Section 3 of the FAA required the Court to stay, and barred the Court from dismissing, this action. (*See* Ford Supp. Br., ECF No. 62.)  Ford further argued that in the event that the Court did decide to dismiss, the dismissal should be with prejudice. (*See id.*)  Arabian Motors countered in its supplemental brief that the Court has the discretion to dismiss the action and that any dismissal should be without prejudice. (*See* Arabian Motors Supp. Br., ECF No. 63.)

## II

It is well established that this Court "has the power to dismiss a complaint *sua sponte* pursuant to Rule 12(b)(6), provided that the plaintiffs have been given adequate notice and an opportunity to amend." *O'Lear v. Miller*, 222 F.Supp.2d 862, 863 (E.D. Mich. 2002).  It is equally well established that a complaint fails to state a claim – and is thus subject to dismiss under Rule 12(b)(6) – where all of the claims are subject to mandatory arbitration. *See Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014) (explaining that a party's "failure to pursue arbitration" in spite of a compulsory arbitration provision means that the party "has failed to state a claim.").  From these rules, it would seem to

16

follow that this Court has the authority to *sua sponte* dismiss a complaint asserting claims that are all subject to mandatory arbitration – and that the Court has that power even if the party invoking arbitration requests a stay rather than dismissal. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988) (holding that district court may exercise its general power of *sua sponte* dismissal when faced with a complaint that asserts only claims that are subject to mandatory arbitration and where the party requesting arbitration seeks only a stay).

Ford contends, however, that Section 3 of the FAA creates an exception to the general rule that the Court may *sua sponte* dismiss a complaint that fails to state a claim on which relief can be granted.  Ford says that Section 3 requires courts to stay, rather than dismiss, complaints in which all claims are subject to arbitration. Ford's position is contrary to the great weight of authority in this Circuit and to the plain language of Section 3.

## A

While the Sixth Circuit has not definitively taken sides in the circuit split over the stay versus dismissal issue,[5] the clear weight of authority in this Circuit holds

---

[5] The circuit split is fully described in two decisions: *Aqua-Chem, Inc. v. Barivien, S.A.*, 2018 WL 4870603, at ** 3-4 (E.D. Tenn. Mar. 16, 2018) and *W & T Travel Serv., LLC v. Priority One Serv., Inc*., 69 F.Supp.3d 158, 172-174 (D.D.C. 2014). Two of the leading decisions holding that Section 3 of the FAA requires a district court to stay, rather than dismiss, an action are *Lloyd v. HOVENSA*, 369 F.3d 263, 270 (3d Cir. 2004) and *Katz v. Cellco*, 794 F.3d 341, 345-46 (2d Cir. 2015).  Two of

17

that a district court may dismiss, rather than stay, a civil action in which all of the

claims must be presented to an arbitrator.   First, several published Sixth Circuit

decisions suggest that dismissal, rather than a stay, is appropriate where all claims

are subject to arbitration.  For instance, in *Green v. Ameritech Corp.*, 200 F.3d 967,

973 (6th Cir. 2000), the Sixth Circuit quoted with approval the Fifth Circuit's

holding that "[t]he clear weight of authority supports dismissal of the case when all

of the issues raised in district court must be submitted to arbitration." *Id.* (quoting

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).

Likewise, in *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1276 (6th Cir. 1990) and *Stout

v. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), the Sixth Circuit affirmed decisions

by district courts dismissing actions in which all claims were subject to arbitration.

Second, the "majority" of unpublished Sixth Circuit decisions addressing the

stay versus dismissal issue hold that a district court may dismiss an action in which

all of the claims are subject to arbitration. *Aqua-Chem, Inc. v. Barivien, S.A.*, 2018

WL 4870603, at *3 (E.D. Tenn. Mar. 16, 2018).  For instance, in *Ozormoor v. T-

Mobile, USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009), the Sixth Circuit held that

district courts are not "require[d] … to stay suits pending arbitration rather than

---

the leading decisions holding that a district court may dismiss an action in which all
claims are subject to arbitration are *Alford v. Dean Witter Reynolds*, 975 F.2d 1161,
1164 (5th Cir. 1992) and *Sparling*, 864 F.2d at 638.

dismiss them." *Id.* at 975.   The court stressed that it had "already rejected [the] argument" that a district court must stay, rather than dismiss, an action in which all claims are subject to arbitration. *Id.* (citing *Arnold, supra*).   Likewise, in *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 372 (6th Cir. 2014), the plaintiff argued that the district court erred when it dismissed, rather than stayed, an action in which all of the claims were subject to arbitration, but the court rejected that argument because "the law is to the contrary." *Id.*   And in *Hensel v. Cargill, Inc.*, 198 F.3d 245 (Table), 1999 WL 993775 (6th Cir. 1999), the court held that dismissal, as opposed to a stay, is proper "where all claims are referred to arbitration." *Id.* at *4.[6]

---

[6] Ford contends that the Sixth Circuit's unpublished decision in *Hilton v. Midland Funding, LLC*, 687 F. App'x 515 (6th Cir. 2017), stands for the proposition that, upon the request of a party, a district court must stay an action even if all of the claims are subject to arbitration. (*See* Ford Supp. Br., ECF No. 62, PageID.1379.) The Court disagrees.   In *Hilton*, no party requested a stay. *See Hilton*, 687 F. App'x at 518.   And the court stressed that a request for a stay is a condition precedent to the applicability of Section 3 of the FAA. *See id.*   Since neither party requested a stay, the court was not called upon to make, and did not make, any *holding* as to whether, in the face of a request, a district court retains discretion to dismiss an action in which all claims are subject to arbitration.   Like several other district courts in this Circuit, the Court concludes that *Hilton* "did not reach (and thus did not alter) the longstanding principle, espoused in *Hensel*, *Ozormoor*, and numerous other Sixth Circuit decisions, that a case 'in which all claims are referred to arbitration may be dismissed.'"   *Kelch v. Pyramid Hotel Group*, 2020 WL 489237, at *3 n.5 (S.D. Ohio Jan. 30, 2020) (quoting *Hensel*, 1999 WL 993775, at *4). *See also Great Am. Ins. Co. v. Johnson Controls, Inc.*, 2020 WL 4569126, at *9 (S.D. Ohio Aug. 7, 2020) (holding that *Hilton* does not compel a stay where all claims are subject to arbitration); *Robinson v. Credit One Bank, N.A.*, 2020 WL 3270690, at *2 (S.D. Ohio June 17, 2020) (same).

Finally, "the overwhelming majority of district courts throughout the [Sixth] Circuit have dismissed," rather than stayed, actions in which all claims are subject to arbitration. *Aqua-Chem*, 2018 WL 4870603, at *3 and n.5 (collecting cases). Indeed, "[m]ost district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." *Debro v. French*, 2017 WL 927622, at *4 (E.D. Mich. Feb. 16, 2017) (report and recommendation), adopted at 2017 WL 914216 (E.D. Mich. Mar 8, 2017).

Absent some persuasive reason, this Court would not be inclined to depart from this clear weight of in-Circuit authority – especially the Sixth Circuit decisions – holding that dismissal, rather than a stay, is appropriate where all claims must be submitted to an arbitrator.

## B

## 1

Ford says that the majority rule in this Circuit runs directly counter to the plain language of – and thus violates – Section 3 of the FAA.  But a careful review of Section 3 reveals that it "is inapplicable" where, as here, "all claims are subject to arbitration." *Aqua-Chem*, 2018 WL 4870603, at *5.

Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon *any issue* referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that *the issue* involved in

20

such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

Section 3's reference to staying "the trial of the action" until the "issue referable to arbitration" has been resolved by the arbitrator clearly signals that the Section deals with a single type of action: one in which less than all of the claims are subject to arbitration and in which, absent a stay, the remaining claims would proceed to "trial." As the district court in *Aqua Chem* persuasively explained:

> Section 3's language mandates courts stay "*the trial of the action.*" 9 U.S.C. § 3 (emphasis added). However, if there are no triable issues before a court, how must it stay a trial? *See* Bales & Goff, *Dismiss or Stay*, at 554. When presented with a claim that is within the scope of a valid and binding arbitration agreement, there is nothing for a court to try; the claim must be arbitrated in accordance with the agreement's directions. Therefore, § 3's command, requiring courts to stay "the trial of the action," cannot be read to apply in cases where there are no triable issues, such as when every claim presented by parties is arbitral. If all claims are subject to arbitration, § 3's mandate is inapplicable because there will be no trial.

> A contrary reading, holding § 3 applies when there are no triable issues, dishonors the statute's text. Doing so omits the very object of § 3's one-hundred-word sentence. If that object, "the trial of the action," is ignored and the statute is read without it, it renders the sentence incomplete and leaves the reader with only questions, not direction. 9 U.S.C. § 3. The court "shall ... stay" what? What is the verb "stay" acting on? The answer to those questions is unambiguous; it is "the trial of the action." The answer is not merely "[...] *the action*," as the Court seemed to

21

believe. *Id.* (emphasis added). Nor does the statute "instruct[ ]" courts to "stay *proceedings.*" *Hilton*, 687 F. App'x at 518 (emphasis added). That is not what the statute's text says. Nor does the statute direct that a court "'shall' *enter a* stay ...," which inserts language and converts the verb "stay" into the object of the sentence. *Lloyd*, 369 F.3d at 269 (emphasis added). As such, the broad reading is contrary to § 3's plain language. It ignores necessary portions of the text at best, and at worst it implies or reads-in words in a way that changes the meaning and structure of the sentence. Accordingly, the Court finds such a broad interpretation of § 3 to be incorrect. The Court cannot abandon or contort § 3's plain language. To do otherwise would be contrary to established rules of statutory construction.

*Aqua-Chem*, 2018 WL 4870603, at *5 (emphasis in original).

The court in *Aqua Chem* rightly attached great significance to Congress' command in Section 3 to stay only "the trial of the action" and correctly concluded that a "stay of the trial" is not the same as a "stay of proceedings." Indeed, Congress distinguished between the two types of stays in the FAA itself. *See* 9 U.S.C. §12 (referring to "an order to stay *the proceedings in an action*.") (Emphasis added). Had Congress intended Section 3 to apply when no claims remain for trial – *i.e.*, when all claims are subject to arbitration – it surely would have referred in Section 3 to a "stay of proceedings," just as it did in Section 9.  As the court in *Aqua Chem* cogently explained, Congress' direction in Section 3 to stay "the trial of the action" makes sense only in the context of an action in which at least one non-arbitrable claim remains *for trial*. *See also* Richard A. Bales & Melanie A. Goff, *An Analysis of an Order to Compel Arbitration: To Dismiss or Stay*, 115 Penn St. L. Rev. 539,

553-55 (Winter 2011) (arguing that the "trial of the action" language in Section 3 makes clear that the Section does not require a stay where all claims are subject to arbitration and no claims remain for trial).

The Sixth Circuit has confirmed this reading of Section 3. It has stressed that Section 3 applies where "any *separate* claim is referable to arbitration;" in that event, "a stay of proceedings on the *remaining* claims is mandatory." *Hensel*, 1999 WL 993775, at *4 (emphasis added). Justice Stephen Breyer, who appears to be the only member of the Supreme Court to address the stay versus dismissal issue, has likewise adopted this reading of Section 3. In a dissenting opinion touted by Ford as containing an "extensive" analysis of Section 3 (Ford Supp. Br, ECF No. 62 at PageID.1378), Justice Breyer explained that Section 3 applies "[w]here a suit contains several claims, and the district court has determined that the parties agreed to arbitrate only a subset of those claims." *Lamps Plus*, *Inc. v. Varela*, __ U.S. __, 139 S.Ct. 1407, 1423 (2019) (Breyer, J., dissenting).[7] In Justice Breyer's words, the stay provided for in Section 3 "relieves the parties of the burden and distraction of continuing to litigate any remaining claims [– *i.e.*, any claims not subject to

---

[7] The majority in *Lamps Plus* did not disagree with Justice Breyer's reading of Section 3. It did not reach the point.

arbitration –] while the arbitration is ongoing." *Id.*[8] Section 3 simply does not apply where, as here, there are no claims "remaining" in the district court for trial.

Ford's contrary reading of Section 3 focuses on the wrong language in the statute. Ford focuses narrowly on the term "shall." Ford insists that because Section 3 "provides that the Court 'shall' implement a stay," it leaves a district court "no discretion to dismiss a case" in which all of the claims are referable to arbitration. (Ford Supp. Br., ECF No. 62 at PageID.1374-1378.) But Ford's tight focus on the word "shall" ends up begging the key question. There is no dispute that Section 3 – by using the term "shall" – commands a district court to enter a stay. The question is: *when* must a district court enter a stay? And that question cannot be answered by reference to the term "shall," standing alone. On the contrary, to answer that question, the Court must read the term "shall" in the context of Section 3 as a whole. And that Section does not merely provide that a court, in Ford's words, "shall implement a stay." Instead, as set forth above, it provides that a court "shall stay the trial of the action." And for all of the reasons explained above (and confirmed by

---

[8] It is true, as Ford notes, that Justice Breyer concluded that the district court in *Lamps Plus* should not have dismissed that action after compelling arbitration. *See Lamps Plus*, 139 S.Ct. at 1424-26 (Breyer, J., dissenting). But Justice Breyer's reasoning was not based upon the reading of Section 3 that Ford advances. Instead, Justice Breyer concluded that dismissal was inconsistent with the structure of, and policy underlying, the FAA because a dismissal allows for an immediate appeal. *See id.* As explained in detail below in Section (II)(B)(3), the Sixth Circuit does not appear to share Justice Breyer's view that allowing an immediate appeal from a dismissal order would undermine the FAA's structure and/or policy goals.

Justice Breyer and the Sixth Circuit), that phrase only makes sense when applied to an action in which some claims are subject to arbitration and some are not.

2

Ford alternatively contends that, at a minimum, a district court must stay, rather than dismiss, an action where the party invoking arbitration seeks only a stay and does not request dismissal. (*See* Ford's Supp. Br., ECF No. 62 at PageID.1379.) Ford rests this argument upon the requirement in Section 3 that a district court shall stay a trial "on application of one of the parties…"  But as explained above, Section 3 does not apply to an action in which all claims are subject to arbitration.  Thus, Section 3 does not preclude a district court from dismissing such an action even where the party invoking arbitration seeks only a stay.  Simply put, "even where a party seeks a stay under § 3, the court has discretion to dismiss under Rule 12(b)(6) if it finds that all of the claims are arbitrable." *Luna v. Kemira Specialty, Inc.*, 575 F.Supp.2d 1166, 1178 (C.D. Cal. 2008). *See also Sparling*, 864 F.2d at 637-38 (rejecting the argument that dismissal, rather than a stay, was improper where party invoking arbitration sought only a stay).  District courts in this Circuit have regularly exercised that discretion. *See, e.g., Griffin v. Gutter Grate of Troy/Birmingham*, 546 F.Supp.2d 469, 472 (E.D. Mich. 2008) (dismissing an action in which all claims were subject to arbitration even though party invoking arbitration sought only a stay); *The Detroit Edison Co. v. Burlington Northern and Santa Fe Ry. Co.*, 442

F.Supp.2d 387, 394 (E.D. Mich. 2006) (same); *Tolbert v. Coast to Coast Dealer Serv., Inc.*, 789 F.Supp.2d 811, 818-19 (N.D. Ohio 2011) (same).

**3**

Next, Ford argues that a district court should not be permitted to dismiss an action in which all claims are subject to arbitration because a dismissal would undermine the FAA's policy of encouraging prompt and efficient arbitration proceedings. Ford highlights that a dismissal order is immediately appealable, and Ford contends that "allowing a district court to 'dismiss the action rather than enter a stay' would 'deprive' a party who has been held entitled to arbitration … of an important benefit which the FAA intended him to have – the right to proceed with arbitration without the substantial delay arising from an appeal.'" (Ford Supp. Br., ECF No. 62, PageID.1377, quoting *Lloyd*, 369 F.3d at 240.)

This argument conflicts with the Sixth Circuit's analysis in *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091 (6th Cir. 2002). In that case, the court examined the circumstances under which it has jurisdiction to hear an appeal from an order "deferring to arbitration." *Id.* at 1095-1101. The court reaffirmed its prior holding in *Arnold*, *supra*, that a party may immediately appeal from an order "which *dismisses* an action in deference to arbitration" and is accompanied by "a final judgment." *Id.* at 1096 (emphasis in original) (quoting *Arnold*). The court offered a lengthy defense of its rule permitting immediate appeals from dismissal orders. It

opined that such appeals would not create intolerable inefficiencies because district courts can be trusted to "choose carefully between issuing stays [which are not immediately appealable] and dismissals [which are immediately appealable]…." *Id.* at 1100. The court noted that "the savings to the courts [of permitting immediate appeals from dismissal orders] are dwarfed by the savings to the parties of not appealing such cases." *Id.* The court then explained that allowing immediate appeals from dismissal orders would not undermine the pro-arbitration goals of the FAA:

> There is little reason to think that future parties will appeal dismissals ordered in deference to arbitration when they are highly unlikely to prevail. Parties will not want to accrue additional costs when they will have no choice in the end but to proceed with arbitration anyway. Hence, this circuit's approach [of allowing district courts to enter orders of dismissal which may be immediately appealed] promises to be quite efficient prospectively, once district courts and future parties recognize the implication of the rule.
>
> ***
>
> [And,] in cases where there is a genuine legal question concerning arbitrability, a dismissal rather than a stay allows that question to be determined promptly on appeal. On the other hand, in the large majority of cases, the district court can speed along an arbitration about whose validity it thinks there is little legal dispute by staying the action rather than dismissing it. The statute appears to contemplate this case-management advantage, and the courts of appeals should enforce that statutory scheme rather than create another test for appealability not grounded in the language of the statute.

*Id.*

Finally, the court stressed that the entry of immediately appealable dismissal orders would not substantially expand the number of appeals from pro-arbitration decisions because district courts "may already elect to certify or not certify [under 28 U.S.C. § 1292] an interlocutory order for immediate appellate review." *Id.* at 1000. Stated another way, since district courts already have the authority to permit an interlocutory appeal from an otherwise non-appealable stay order, allowing district courts to permit an immediate appeal by entering a dismissal order would not meaningfully change the volume of appeals from pro-arbitration decisions. *ATAC* illustrates that the Sixth Circuit trusts district courts to allow sensible immediate appeals from pro-arbitration decisions (by entering an order of dismissal) and to preclude such appeals when they would inhibit efficiency (by entering a non-appealable stay order).

In sum, while *ATAC* technically involved only a question of appellate jurisdiction, the court's analysis unmistakably evidences the Sixth Circuit's view that the entry of an immediately appealable dismissal order does not undermine the pro-arbitration policy of the FAA.

### III

The Court concludes that dismissal of this action, rather than a stay, is appropriate.  First, the history of this action makes clear that all of Arabian Motors' remaining, non-moot claims are subject to arbitration.  Arabian Motors – the only party resisting arbitration – has never suggested that any of its claims in this action fall outside of the Resale Agreement's mandatory arbitration provision.  Instead, Arabian Motors has contended only that that the Fairness Act renders the mandatory arbitration provision unenforceable.  This Court rejected that argument when it denied Arabian Motors' motion for a preliminary injunction. (*See* Op. and Order, ECF No. 18.).  The Arbitrator who was assigned to adjudicate the dispute between Ford and Arabian Motors then squarely rejected Arabian Motors' contention that the Fairness Act bars enforcement of the mandatory arbitration provision. (*See* Arbitrator's Final Award, ECF No. 32-2.) And this Court and the Sixth Circuit later declined to disturb the Arbitrator's determination that the Fairness Act does not bar enforcement of the mandatory arbitration provision. (*See* Order, ECF No. 37; *Arabian Motors*, 775 F. App'x at 216.)  Simply put, the sole basis for avoiding arbitration has been rejected by this Court and then again by the Arbitrator who has jurisdiction over this dispute, and the Sixth Circuit has declined to disturb

Arbitrator's ruling.  It is thus clear at this point in the litigation that all of the remaining claims are subject to arbitration.[9]

Second, entering a dismissal and permitting an immediate appeal would make good sense for the reasons identified in *ATAC*, *supra*.  Here, "there is a genuine legal question concerning arbitrabilty," and "a dismissal rather than a stay allows that question to be determined promptly on appeal." *ATAC*, 280 F.3d at 1101.  The dispute over arbitrability here is particularly well-suited for a prompt resolution on appeal because the dispute turns upon a purely legal question of statutory interpretation: whether the Fairness Act applies to foreign automobile dealers.  The Sixth Circuit can decide that issue efficiently and without any need for a deep dive into a detailed evidentiary record.  It makes sense to resolve this purely legal issue

_____

[9] Ford counters that the Arbitrator has not yet decided whether Arabian Motors' remaining, non-moot claims are subject to arbitration and that it is at least possible that some of those claims "would come back to this Court for a trial on the non-arbitrable issues." (Ford's Supp. Br., ECF No. 62, PageID.383.)  While it is true, as a purely technical matter, that the Arbitrator has not yet specifically ruled that Arabian Motors' remaining, non-moot claims are subject to arbitration, he has already rejected Arabian Motors' sole argument for avoiding arbitration – *i.e.*, its argument that the Fairness Act bars enforcement of the mandatory arbitration provision of the Resale Agreement.  Thus, there is no reasonable possibility that any of Arabian Motors' remaining claims will be returned to this Court for trial.  In any event, courts have entered orders of dismissal where, as here, all claims must be presented to an arbitrator for his determination as to whether they are arbitrable. *See, e.g., W & T Travel Serv.*, 69 F.Supp.2d at 174 ("In light of the conclusions set out above, however, that the arbitration requirement survives termination of the Subcontract, which vests authority with the arbitrators, not this Court, to determine arbitrability, no issues are left for this Court to resolve. In these circumstances, dismissal is appropriate.").

now rather than sending the parties off to conduct an arbitration that could be costly, lengthy, and unnecessary (if Arabian Motors were to persuade the Sixth Circuit that this Court erred in holding that the Fairness Act does not bar enforcement of the arbitration provision in the Resale Agreement).[10]

## IV

For all of the reasons explained above, Ford's motion for a stay (ECF No 55 is **DENIED** and Arabian Motors' remaining, non-moot claims are **DISMISSED WITHOUT PREJUDICE**.[11] *See Milan Exp. Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 F. App'x 482, 486 (6th Cir. 2014) (explaining that Sixth Circuit has "approved" a dismissal without prejudice "in several cases" in which district courts have determined that all claims are subject to arbitration). And to be clear: the Court intends for this dismissal to be a final decision on the merits that is subject to immediate appeal by Arabian Motors. *See Howell v. Rivergate Toyota*, 144 F.

---

[10] The Court earlier declined to certify for interlocutory review its opinion and order denying Arabian Motors' motion for a preliminary injunction staying the arbitration commenced by Ford. (*See* Order, ECF No. 30.) As the Court explained in detail, it made sense to deny appellate review at that time given the procedural posture of both this action and the underlying arbitration. (*See id.*, PageID.936-939.) The procedural issues that weighed heavily against appellate review earlier have largely dissipated and no longer tip the scales against such review.

[11] As a reminder, the Court has dismissed as moot Count I of Arabian Motors' Complaint and the portion of Count II that seeks a declaratory judgment that Arabian Motors should not be compelled to arbitrate Ford's claims. The Court dismisses the remainder of Arabian Motors' claims without prejudice.

App'x 475, 477 (6th Cir. 2005) (holding that an order dismissing an action without prejudice on ground that claims are subject to arbitration is a "final decision" that may be immediately appealed); *Hilton*, 687 F. App'x at 518 (same).[12]

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 15, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 15, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

---

[12] The Sixth Circuit said that it would entertain an appeal after this Court entered "a decision that ends the litigation on the merits by disposing of the claims alleged in the complaint." *Arabian Motors*, 775 F. App'x at 217 n.1.  A dismissal without prejudice that "send[s] all issues to arbitration and leaving the district court nothing more to do than execute the judgment" *does* "end[] the litigation on the merits" and *is* a "final decision" over which a federal court of appeals "ha[s] appellate jurisdiction." *Griggs v. S.G.E. Man., LLC*, 905 F.3d 835, 844 (5th Cir. 2018). *See also Blair v. Scott Specialty Gases*, 283 F.3d 595, 600-03 (3d Cir. 2002) (holding that order dismissing complaint without prejudice on ground that all claims were subject to arbitration was an immediately appealable "final decision" and collecting cases with same holding).